MILLS & GIBBS *et al.,* Appellants, v. MILLER & DAUGHERTY.

**General Assignment:** MORTGAGEES. A mortgagee should not be charged with notice that the mortgagor contemplates a general assignment, simply because he knows that the mortgagor is financially embarrassed.

BURDEN OF PROOF: *Preference.* The burden is on attaching creditors to show that the debtor intended to make a general assignment when a prior mortgage was executed, which they claim was void because part of a general assignment with preferences, and that the mortgagee had notice thereof.

SAME: *Fraud.* To defeat a mortgage given to a creditor immediately before a general assignment for creditors, it is necessary to show that the debtor intended to make a fraudulent assignment, and that the mortgagee knew of that intent when accepting the mortgage.

ASSENT OF ONE PARTNER. One partner cannot make a general assignment if his co-partner can easily be, but is not consulted, and his assent obtained.

RATIFICATION: *Creditors before ratification.* A ratification of a general assignment by a partner whose assent was necessary to its validity does not affect rights of creditors accruing before the ratification was made.

SAME. Where an assignee of a firm took possession of the property under a general assignment executed by one partner, only, and valid only from its ratification by his co-partner, his rights are inferior to a creditor who, prior to the ratification, attached by garnishment the property in his possession.

ACCEPTANCE OF MORTGAGEE: *Presumptions.* Where a lender asks security at the time of the loan, and a mortgage is afterward executed to him, and filed for record, he will be presumed to have accepted it when informed of it.

*Appeal from Blackhawk District Court.*—HON. A. S. BLAIR, Judge.

THURSDAY, DECEMBER 14, 1899.

ACTION in equity to have set aside and decreed to be void certain chattel mortgages and a general assignment for the benefit of creditors. There was a hearing on the merits,

and a decree, from which the plaintiffs Mills & Gibb and John Pullman & Co., appeal. *Affirmed* in part and *reversed* in part.

*Reed & Tuthill* and *Alford & Gates* for appellants.

*F. C. Platt* and *Boies & Boies* for appellees Commercial National Bank, T. S. Daugherty, and S. H. Foreman.

ROBINSON, C. J.—In August, 1896, the defendants M. P. Miller and Charles R. Daugherty were engaged as partners under the name of Miller & Daugherty, in carrying on the mercantile business at Washington and Waterloo, in this state. They had a stock of merchandise of considerable size at each place. Each partner assisted somewhat in the supervision of the business at each place, but Miller resided at Washington, and exercised chief control of the stock there, while Daugherty, in like manner managed the stock at Waterloo, where he resided. On the 27th day of August, the firm was financially embarrassed, and Daugherty was at Dwight, Ill., for medical treatment. Miller then being at Washington, and acting in the name of the firm, executed to each of his co-defendants who appear in this court, a mortgage on the stock of merchandise at Waterloo, the mortgage to Foreman also including the book accounts of the firm and the fixtures used in its business, and to the Washington county Savings Bank a mortgage on the stock of goods, fixtures, and other property of the firm at Washington, including book accounts and notes. On the same day Miller executed in the name of the firm a general assignment for the benefit of its creditors. The instruments specified were executed in the afternoon and early part of the evening of the day mentioned and a few minutes before 8 o'clock the Waterloo mortgages were given by Miller to an employe of the firm named Frank L. McKane, with instructions to take them to Waterloo. McKane went to Waterloo, and early the next morning delivered the mortgage intended for Mrs. T. S. Daugherty to her,

and went with her to the court house, where it was filed for record. He then went to the place of business of the Commercial National Bank, and delivered to it the mortgage executed in its favor, and the mortgage was at once filed for record. A short time thereafter he filed for record the Foreman mortgage, and a few hours later filed the assignment for record. On the day these mortgages were filed for record, Miller executed a second general assignment for the firm, which was recorded in Washington county. Within a short time numerous creditors of the firm, including the appellants, commenced actions against it, aided by attachments, and in process of time judgments were duly rendered on their claims. This action was commenced by those creditors, and they asked that the mortgages and the general assignments be set aside; that the priority of liens and garnishments which were the result of the attachments be ascertained and determined, and that property of the firm in the hands of the sheriff and of a receiver, who had been appointed for the property of the firm, be ordered paid to the several parties in interest in the order of the priority of their claims. Answers were filed by various defendants, and upon hearing the evidence the district court found and adjudged that the three mortgages on the property in Waterloo were valid, and created liens superior to any other interest in the property represented in the action, and provided for the payment of the claims which the mortgages secured from funds in the hands of the receiver. The district court also found and adjudged that the two assignments were ratified by Daugherty on the 4th day of September, 1896, and thereby became valid from the date of their delivery, subject to the intervening rights of attaching creditors. The decree also contained provisions in regard to the rights of various parties to the action, which are not involved in this appeal, and will not be considered. We are only required to determine whether each of the three mortgages on the Waterloo property is valid as against the appellants, and the liability of the assignee to

account to them for certain money and accounts in his hands. It is claimed that the mortgages are void, because parts of a general assignment of the property of the firm with preferences; that the debts which the mortgages were delivered to secure were contracted in good faith, and are valid, is clearly shown, and does not seem to be questioned.

I. The first mortgage in the order of delivery is that of Mrs. Daugherty. She is the mother of Charles R. Daugherty, and of the wife of M. P. Miller. She had some conversation with Miller a few days before the mortgage to her was executed, in which she was told that the firm was somewhat embarrassed, but that it hoped to avoid trouble. Her notes were at that time in the possession of her daughter at Washington, who was instructed to protect her mother in case of an emergency. The first mortgage given by Miller was the one in favor of the Washington County Savings Bank. After that had been executed, he told his wife of it, and she insisted that he should give her mother a mortgage, and she obtained her mother's notes, and handed them to him. He told her he would give the mortgage desired, and at once went to the office of an attorney, and executed the one to Mrs. Daugherty, in question. There is some confusion in the testimony in regard to what was said by McKane to Mrs. Daugherty the morning of August 28th, when the mortgage was delivered to her, but we are of the opinion that a preponderance of the evidence shows that she did not know that an assignment had been made or was contemplated when she accepted the mortgage. We are of the opinion, also, that she should not be charged with notice of the assignment from the knowledge she possessed of the embarrassment of the firm, and its purposes. Her daughter did not know of the proposed assignment when she secured from her husband the promise to execute the mortgage. In fact, at the time the husband had no intention of executing the assignment. The burden was on the plaintiffs to show that the firm intended to make a general as-

signment when the mortgage was executed, and also that the mortgagee had notice of the intent. *Roberts v. Press*, 97 Iowa, 475; *Stove Co., v. Shedd,* 82 Iowa, 540. They have failed to make the showing required. It is well settled in this state that one partner of a firm does not have authority, by virtue of the partnership relation alone, to make a general assignment of the property of the firm for the benefit of creditors, if his co-partner can easily be, but is not, consulted, and his assent to the proposed assignment obtained. *Loeb v. Pierpoint*, 58 Iowa, 469; *Hunter v. Waynick*, 67 Iowa, 555. See, also, *Mayer v. Bernstein,* 69 Miss. 17 (12 South. Rep. 257); 3 Am. & Eng. Enc. Law (2d ed.), 27. In *Hunter v. Waynick* the partner whose assent to the sale of the partnership property was not obtained resided seventy-five miles from the place where the partnership business was carried on, and where the sale was made, but there was a daily mail by railroad, and a telegraph line between the two places, and no sufficient reason for not communicating with the absent partner was shown. The sale was held to be invalid. In this case the means of communication between Miller and his absent partner were good and sufficient, but resort to them was not had, although Daugherty was in condition to be consulted. On the 4th day of September, Daugherty sent to Miller a telegram as follows: "I confirm assignment from the first." The district court rightly held that the assignment was not valid until ratified by Daugherty, and that the ratification did not affect the rights which had accrued before it was made. It was necessary, in order to defeat the mortgage to Mrs. Daugherty, to show not only that the firm intended to make a fraudulent assignment, but also that she knew of that intent when she accepted the mortgage. *Groetzinger v. Wyman*, 105 Iowa, 574, 587; *Bank v. Garretson*, 107 Iowa, 196; *Manton v. J. F. Seiberling & Co.* 107 Iowa, 534. The mortgages, considered separately or together, do not constitute a general assignment, for the reason that they do not include all the property of the

partnership. Miller had power to execute a chattel mortgage in the name of the firm to secure the firm debts. *Lead Co. v. Haas,* 73 Iowa, 399; *Letts, Fletcher & Co. v. McMasters,* 83 Iowa, 449. We conclude that the mortgage to Mrs. Daugherty is valid as against the claims of the appellants.

II. Much of what we have said applies to the mortgages in favor of the Commercial National Bank and Foreman. It is only necessary to say further in regard to the mortgage to the bank that it was accepted in good faith, without any knowledge on the part of the bank of the purpose of the firm to make a general assignment, and is valid. The evidence in regard to the Foreman mortgage is not quite so clear and satisfactory. It appears that he resides in Washington, but at the time the mortgage was executed he was absent from the town. The mortgage was sent to Waterloo before he had any knowledge of it. When he loaned to the firm the money to secure which the mortgage was given, Miller agreed to protect him in case of trouble. He returned to Washington the evening of August 27th, and there learned of the mortgage from a relative. He saw Miller at about half past 7 o'clock the next morning, and talked about the debt and mortgage; Miller telling him that the mortgage had been given him for security. It is not clear when Foreman first learned of the assignment, but it is his recollection that he heard nothing of it until his own matters had been talked over. He does not state when he accepted the mortgage, but that it was accepted by him is shown, and in view of the fact that he had asked security, and that the mortgage was given pursuant to the agreement with Miller when the money was loaned, it will be presumed that he accepted it when informed of it. The evidence tends to show that such was the case, and there is nothing to show that it was not then accepted. At that time the assignee had not accepted the trust created by the assignment. As the burden was on the plaintiffs to show that the mortgage was invalid before they are entitled to relief on account of it, they must fail.

III.   It appears that the assignee for the benefit of creditors took possession of notes and book accounts belonging to the firm; that while he so held them, and before the assignment was ratified by Daugherty, he was garnished under the attachments issued at the suit of the plaintiffs, and that the money and collectible accounts in his hands at the time of the trial amounted to about one thousand two hundred dollars. The appellants contend that the amount stated should be held subject to their garnishment. The appellees do not respond to the claim thus made. There appear to be some conflicting provisions in the decree in regard to the payments to be made by the assignee, or one which is obscure, but the fifth paragraph provides that the assignee shall retain all money which he collected from book accounts and all uncollected accounts. If it be true that this provision is not modified by the sixth paragraph of the decree,—and we are inclined to think it is not, and so hold,—then the effect of the decree is to except from the attachment of the appellants, accounts and money which was collected from accounts, which were in the hands of the assignee when garnished, and before the assignment was ratified. That provision is erroneous. By virtue of the garnishment the appellants acquired claims against the garnishee, and a right to an accounting by him which was superior to the right of the assignee acquired by virtue of the assignment. *McDonald v. Creager,* 96 Iowa, 659; *Sperry v. Gallaher,* 77 Iowa, 107; *Dahlman v. Greenwood,* 99 Wis. 163 (74 N. W. Rep. 215). This case is unlike that of *Booth v. Gish,* 75 Iowa, 451, in which it was held that the garnishment of the holder of property which was subject to chattel mortgages did not confer any right against the garnishee. But in that case the property was rightfully taken from the possession of the garnishees by virtue of the chattel mortgages, and the garnishees were powerless to prevent it. No lien was obtained under the garnishment on the mortgaged property, and the garnishees were correctly held not to be accountable for property rightly taken

from them under a superior title.   In this case the book accounts in question appear to have been mortgaged, but were not required to pay the mortgage debt, and therefore their holder, the assignee, was subject to garnishment.   It follows from the conclusions stated that the decree of the district court, so far as it determines the rights of Mrs. Daugherty, the Commercial National Bank and Foreman, is AFFIRMED ; and so far as it exempts the book account and money collected from book accounts in the hands of the assignee from the claim of the appellants is REVERSED.

GRANGER, J., not sitting.